IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER T. THOMAS,          )
                                )
                    Petitioner, )        Civil Action No. 2:17-cv-1659
                                )
        v.                      )
                                )
SUPERINTENDENT ERIC TICE, *et al.*, )
                                )
                   Respondents. )

## MEMORANDUM

Pending before the Court[1] is the Second Amended Petition for a Writ of Habeas Corpus (ECF No. 29) filed by state prisoner Christopher Thomas ("Petitioner") pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court will deny the Second Amended Petition and deny a certificate of appealability.

## I.      Introduction

Petitioner challenges the judgment of sentence imposed upon him by the Court of Common Pleas of Allegheny County on September 13, 2012 after he was convicted of eight counts of burglary. He brings a claim of malicious prosecution (Claim I), ineffective assistance of trial counsel (Claim II), insufficient evidence (Claim III), and trial court error (Claim IV). ECF No. 29 at 5-15; *see also* Memorandum of Law, ECF No. 29-1. In their Answer (ECF No. 40), Respondents assert that the Court must deny the Second Amended Petition because Petitioner's claims are procedurally defaulted, non-cognizable, and/or lack merit.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

II.      **Relevant Background**[2]

From August through December 2010, eight burglaries were carried out at cell phone stores located in Allegheny County that all shared the same *modus operandi*. The perpetrator gained entry to the store by shattering a window or glass door, stole cell phones and other electronics (usually from the display cases), and then quickly exited the store. The first burglary occurred on August 25, 2010 at a TMobile store, and then seven similar burglaries occurred at other cell phone stores on August 28, September 20, September 29, October 7, November 22, December 1, and December 21, 2010.

Detective Nicholas Pashel, who in 2010 was an investigator for the City of Pittsburgh Police, was assigned to investigate the burglaries. He testified at Petitioner's trial that on December 1, 2010, he went to Black Inc. Wireless store "because he received information that stolen cell phones and the burglar might be there." *Commonwealth v. Thomas*, No. 1238 WDA 2013, slip op. at 7 (Pa. Super. Ct. Sept. 13, 2012) ("*Thomas I*"), Resp's Ex. 30. Petitioner was working at the Black Inc. Wireless store that day and Det. Pashel observed that he had lacerations on his hands. *Id.* at 7-8. The cell phones on display appeared to Det. Pashel to be used and some looked like those reported missing from the burglaries he was investigating. During that visit, Det. Pashel recovered one cell phone from the August 28th burglary and two cell phones from the October 7th burglary. *Id.* at 7.

Based upon this and other information, Det. Pashel obtained a search warrant for the Black Inc. Wireless store, which the police executed the following evening, on December 2, 2010. They recovered 13 phones, including five from the December 1st burglary, three from the

---

[2] Respondents submitted a hard copy of the state court record, including the transcripts. They also electronically filed relevant parts of the state court record, including the state court opinions cited herein, as exhibits to their answer to the original petition. *See* ECF No. 20.

August 25th burglary, and two from the November 22nd burglary. There was glue on the battery compartments of some of the cell phones, as well as dissembled phones behind the store's counter, and acetone and pain thinner in the store. *Id.* at 8.

Detective Pashel testified at trial that all the burglaries "appeared to be the same exact systematic actor. Bust out the window with a large rock or brick. The person appeared to be the same height, weight, build. Entered in the same fashion, very fast movement. Taking exactly the same kind of items. Ripping the phones off the displays." *Id.* at 8-9 (quoting Trial Tr. at 165). He stated that one of the most significant shared characteristics of the burglaries was the stealing of display phones instead of new phones, which is atypical because displayed phones have glue on them and most stores will not buy them to resell due to the tedious work required to remove the glue and make them useable. *Id.* at 9 (citing Trial Tr. at 165).

The last burglary occurred around midnight on December 21, 2010 at a Radio Shack located in Pittsburgh's South Side neighborhood. Two residents of the South Side, Mike Barbaro and Joe Doty, were standing across the street from the Radio Shack when they witnessed a man smashing its front window and crawling into the store. *Id.* at 5. Doty called 911 and the police responded within five minutes. They stopped Petitioner, who matched the description given by Doty, as he was running in a nearby alleyway. *Id.* at 5-6. Petitioner had two cell phones and two MP3 players on his person. It was later confirmed that the serial numbers on those items matched those of items from the Radio Shack. *Id.* at 6. Petitioner also had glass fragments on his jeans and shoes. The police placed Petitioner in custody and asked Barbaro and Doty for an identification. They did not see the face of the burglar and could not positively identify Petitioner. They did confirm, however, that Petitioner's attire matched that of the man they had observed breaking into the Radio Shack. *Id.* at 5.

The Commonwealth charged Petitioner at criminal docket CP-02-CR-1010-2011 in the Court of Common Pleas of Allegheny County with one count of burglary for the December 21, 2010 incident. At criminal docket CP-02-CR-9188-2011, it charged him with seven counts of burglary for the earlier crimes committed from August 25 through December 1, 2010. The trial court granted the Commonwealth's motion to join the cases. Resp's Ex. 5.

Petitioner waived his right to a jury trial, Resp's Ex. 15, and his bench trial was held on September 10-13, 2012. The Commonwealth presented testimony from Barbaro, Doty, Det. Pashel, and numerous other law enforcement officers who responded to and/or investigated one or more of the burglaries. It also introduced more than 60 exhibits of surveillance video footage, still photographs of that footage, and photographs of the burglary scenes, as well as the results of a DNA, serology, and glass fragment testing. DNA testing conducted on the blood sample gathered after the September 29, 2010 burglary indicated that it was a match to Petitioner. *Thomas I*, at 10. Petitioner's trial counsel stipulated to the value of the merchandise that was stolen from the stores, the authentication of the surveillance videos, and the admission of the DNA, serology, and glass fragment testing reports. Trial Tr. at 17-18.

The trial court rendered a guilty verdict on each burglary count and sentenced Petitioner to consecutive terms of incarceration amounting to an aggregate term of eight to 16 years of imprisonment, to be followed by 20 years of probation. Prior to entering his verdict, the trial court recited the evidence that supported its determination that Petitioner was guilty of each count of burglary. *Id.* at 213-26.

Petitioner, through new counsel, filed a direct appeal with the Superior Court within which he raised seven issues, only two of which are relevant to this habeas case. *Thomas I*, at 10-12. In relevant part, he contended that: (1) the Commonwealth introduced insufficient evidence to

support the trial court's verdicts; and, (2) the trial court abused its discretion in overruling the defense objection to Det. Pashel's testimony that the burglaries had "an identical MO." *Id.*, at 11, 15-22, 26-34. The Superior Court denied both claims on the merits and affirmed Petitioner's judgment of sentence. *Id.* The Supreme Court of Pennsylvania denied a petition for allowance of appeal. Resp's Ex. 34.

Petitioner next sought relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). Resp's Ex. 35; *see also Commonwealth v. Thomas*, No. 561 WDA 2016, slip op. at 2-3 (Pa. Super. Ct. Feb. 15, 2017) ("*Thomas II*"), Resp's Ex. 46. The trial court, now the PCRA court, appointed new counsel who filed an amended PCRA petition. Resp's Ex. 36. Petitioner raised the following two claims for PCRA relief: (1) trial counsel was ineffective for failing to request that the trial judge recuse himself on the ground that Petitioner had elected to proceed to a nonjury trial and the judge had knowledge of his prior burglary convictions because he had ruled on and granted the motion *in limine* to exclude those prior convictions; and, (2) trial counsel was ineffective for suggesting to the court in her closing argument that Petitioner was involved in a conspiracy to commit the burglaries. *Id.* 3-11.

The PCRA court determined that no hearing was required and denied Petitioner's claims. Resp's Exs. 38-40. In *Thomas II* the Superior Court affirmed the PCRA court's judgment with respect to Petitioner's claim that counsel was ineffective for the statement she made in her closing argument, agreeing that that claim had no merit. *Thomas II*, at 5-7. However, the Superior Court remanded the case to the PCRA court to evaluate Petitioner's other claim, instructing it "to file a Rule 1925(a) opinion containing a discussion of the arguable merit and prejudice prongs of [Petitioner's] recusal ineffectiveness claim[.]" *Id.* at 10-11.

The PCRA court subsequently issued its supplemental opinion explaining that Petitioner's claim that trial counsel was ineffective regarding the recusal issue had no merit. Resp's Ex. 47. The Superior Court agreed and affirmed in *Commonwealth v. Thomas*, No. 561 WDA 2016, slip op. (Pa. Super. Ct. May 1, 2017) ("*Thomas III*"), Resp's Ex. 48.

The Pennsylvania Supreme Court denied a petition for allowance of appeal. Resp's Ex. 52. Thereafter, Petitioner commenced this habeas case. He filed his original petition at ECF No. 7, and an amended petition at ECF No. 12. Respondent filed their first answer at ECF No. 20. Petitioner then filed a motion for leave to file an amended petition. ECF No. 24. The Court denied Petitioner's request to the extent he sought to bring a claim of malicious prosecution, but otherwise granted him leave to file an amended petition. ECF No. 25. The Court expressly instructed Petitioner that in his amended petition he must raise all grounds for which he contends he is entitled to habeas relief. *Id.*

Petitioner subsequently filed his Second Amended Petition at ECF No. 29. As set forth above, in Claim I he brings a claim of malicious prosecution (notwithstanding the Court's prior order), in Claim II he contends that his trial counsel was ineffective, in Claim III he contends that the Commonwealth did not introduce sufficient evidence to convict him, and in Claim IV he bring a claim of trial court error. Respondents have filed their Answer, ECF No. 40, to which Petitioner filed a Reply, ECF No. 42.

## III.    Discussion

### A.      Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. The statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of

the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g., Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief (for example, he must overcome the burden imposed upon him by the standard of review set forth at 28 U.S.C. § 2254(d)), but, ultimately, Petitioner cannot receive federal habeas relief unless he demonstrates that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g., Vickers*, 858 F.3d at 849.

### B.    Exhaustion and Procedural Default

The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g., Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have first presented every federal constitutional claim raised in his federal habeas petition to *the Superior Court either on direct or PCRA appeal. See, e.g., Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004).

The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism," *Coleman*, 501 U.S. at 730. To succinctly summarize this doctrine, it provides that a Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and cannot do so now because the state courts would decline to address the claims on the merits since state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason, the Superior Court declined to address the federal claim on the merits. *See, e.g., Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-56 (1999) (Stevens, J. dissenting) (describing the history of the procedural default doctrine); *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Lines v. Larkins*, 208 F.3d 153, 162-69 (3d Cir. 2000).

When a claim is procedurally defaulted, a petitioner can overcome the default if he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]"[3] *Coleman*, 501 U.S. at 750. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Id.* at 753 (emphasis in original). It is Petitioner's burden to prove "cause" and "prejudice" to overcome the default of a claim. *Id.* at 750.

---

[3] A petitioner may also overcome his default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This means that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup v. Delo*, 513 U.S. 298, 316 (1995). In only the extraordinary case will a petitioner be able to establish a "fundamental miscarriage of justice." Petitioner does not argue that he can avoid the default under the fundamental miscarriage of justice rule, and this is not one of the rare cases in which that rule is implicated.

C.      **Standard of Review**

In 1996, Congress made important amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). It reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

A finding of fact made by a state court always has been afforded considerable deference in a federal habeas proceeding. AEDPA continues that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d). It applies "to any claim that was adjudicated on the merits" by the Superior Court[4] and it prohibits a federal habeas court from granting relief unless the petitioner established that the Superior Court's "adjudication of the claim":

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

---

[4] When applying § 2254(d), the federal habeas court considers the "last reasoned decision" of the state courts. *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)); *Brown v. Sup't Greene SCI*, 834 F.3d 506, 512 (3d Cir. 2016).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court (here, the Superior Court) made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g., Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1). It is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States," is ascertained, this Court must determine whether the Superior Court's adjudication of the claim at issue was "contrary to" that law. *Williams*, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is "contrary to…clearly established Federal law, as determined by the Supreme Court of the United States" § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent," *id.* at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent.

10

*Williams*, 529 U.S. at 406. Therefore, the issue in most federal habeas cases is whether the adjudication by the state court survives review under § 2254(d)(1)'s "unreasonable application" clause.

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis*, 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the Superior Court's decision was incorrect. *Id.* He must show that it "'was *objectively* unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by Court of Appeals). This means that Petitioner must demonstrate that the Superior Court's decision "*was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*." *Richter*, 562 U.S. at 103 (emphasis added). As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra*, at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]" *Burt v. Titlow*, 571 U.S. 12, 18 (2013). "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the

state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis*, 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see Rice v. Collins*, 546 U.S. 333, 342 (2006) (reversing court of appeals's decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. *Wood*, 558 U.S at 301 (quoting *Collins*, 546 U.S. at 341-42).

In those instances in which the Superior Court did not adjudicate one of Petitioner's constitutional claims on the merits, this Court must determine whether that was because Petitioner procedurally defaulted it because he did not raise it on direct appeal or on appeal in his PCRA proceeding. Only if the claim is not defaulted, or if Petitioner has established grounds to excuse his default, would this Court review a claim *de novo*. *See, e.g., Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

### D.    Petitioner's Claims

#### 1.    Malicious Prosecution

In Claim I Petitioner brings a claim of malicious prosecution. There are five elements to a claim of malicious prosecution: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding terminated in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the

plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *See, e.g., Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014). As the Court previously advised Petitioner, a claim of malicious prosecution is not cognizable in a habeas proceeding and can only be brought in a civil rights action if his criminal proceeding is terminated in his favor.

Accordingly, Claim I is denied because it is not cognizable in a habeas action.

2.    Ineffective Assistance of Trial Counsel

Claims of ineffective assistance are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the right to be represented by an attorney who meets at least a minimal standard of competence. 466 U.S. at 685-87. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Titlow*, 571 U.S. at 24.

Under *Strickland*, it is Petitioner's burden to establish that his "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has emphasized that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Richter*, 562 U.S. at 104 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689). Counsel cannot be

deemed ineffective for failing to raise a meritless claim. *See, e.g., Preston v. Sup't Graterford SCI*, 902 F.3d 365, 379 (3d Cir. 2018).

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's errors must be so serious as to have "deprive[d] [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. Under *Strickland*, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Importantly, in Claim II Petitioner *does not bring either of the ineffective assistance of trial counsel claims that he raised in his PCRA proceeding*. Rather, he brings entirely different claims. He faults his trial counsel for allegedly failing to present facts disproving the Commonwealth's case, being unprepared, and providing a generic representation lacking in trial strategy. He also asserts that she should not have stipulated to the admission of evidence "without consulting [him]" because "the Commonwealth was attempting to furnish to the court during trial inadequate poor surveillance video and still photos [that did not] depict[] [him]." ECF No. 29 at 7.

As Respondents point out, Petitioner's allegations that trial counsel was "unprepared" or "lacked a trial strategy" are too boilerplate to state a claim for habeas relief because he fails to provide the necessary detail in support. Although *pro se* filings must be construed liberally and with a measure of tolerance, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Merely asserting legal

conclusions does not fulfill the requirements of Rule 2(c). As the Supreme Court explained in *Mayle v. Felix*, 545 U.S. 644, 649 (2005):

> In ordinary civil proceedings, the governing Rule, Rule 8 of the Federal Rules of Civil Procedure, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement. The habeas rule instructs the petitioner to "specify all the grounds for relief available to [him]" and to "state the facts supporting each ground."

The Supreme Court also observed: "Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." *Id.* at 656 (emphasis added). Thus, broad, general allegations that trial counsel did not have a strategy or was unprepared lack the required specificity to raise a valid habeas claim.

The only claims of ineffective assistance that Petitioner pled with the required specificity in Claim II are that trial counsel should not have stipulated to the admission of evidence and that she allegedly failed to argue that the Commonwealth did not satisfy its burden of proving beyond a reasonable doubt the elements of the crime of burglary. ECF No. 29 at 7; *see* also ECF No. 29-1. However, he did not raise either of these claims in his PCRA proceeding and, therefore, Claim II is procedurally defaulted.

Petitioner does not dispute that he procedurally defaulted Claim II. He faults his direct appeal for not raising it. *See* ECF No. 42 at 3. In Pennsylvania, a defendant may not litigate ineffective assistance of trial counsel claims on direct appeal. Such claims can only be raised in a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). Accordingly, Petitioner cannot avoid the default of Claim II by pointing to his direct appeal counsel's failure to raise it.

Petitioner also faults his PCRA counsel for failing to raise Claim II. The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely upon PCRA counsel's ineffectiveness to overcome the default of a federal habeas

claim. *See, e.g., Coleman*, 501 U.S. at 752-54; *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court announced a limited exception to this rule.[5] Under *Martinez*, a Pennsylvania prisoner may avoid the default of an ineffective-assistance-of-trial-counsel claim if he establishes that: (1) the ineffective-assistance-of-trial-counsel claim is "substantial," meaning that Petitioner must demonstrate that "reasonable jurists" could debate the merits of it, *see Workman v. Sup't Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019); and (2) PCRA counsel was "ineffective" within the meaning of *Strickland* for failing to raise it.

Petitioner has not demonstrated that any of the allegations of ineffective assistance he makes in Claim II are substantial, or that PCRA counsel was ineffective for failing to raise them. He has not directed the Court to any meritorious argument trial counsel could have made that the stipulated-to evidence was not authentic or otherwise inadmissible. Although trial counsel could have insisted that the prosecution authenticate every item of evidence it intended to submit, trial counsel's decision not to do so under the circumstances was objectively reasonable and prevented a needless waste of time. Additionally, trial counsel argued at the conclusion of the Commonwealth's case and in her closing submission that the Commonwealth did not prove that Petitioner was guilty of each count of burglary, and specifically that it did not prove that Petitioner was the individual that carried out each crime. Trial Tr. at 195-202. The trial court was not persuaded by her arguments, but Petitioner has not demonstrated that was the result of any ineffectiveness on her part.

Based upon the foregoing, Claim II is denied because it is procedurally defaulted.

---

[5] The holding in *Martinez* is limited to defaulted ineffective-assistance-of-trial-counsel claims. *See, e.g., Davila*, 137 S. Ct. at 2062-70. It does not apply to any other type of claim. *Id.*

3.      Insufficiency of Evidence

In Claim III Petitioner contends that the Commonwealth introduced insufficient evidence to support the trial court's verdicts. ECF No. 29 at 8-9. The Superior Court denied this claim on the merits in *Thomas I*. It provided a nine-page summary of the evidence the Commonwealth introduced at the trial,[6] set forth the standard for analyzing a claim challenging the sufficiency of the evidence, and quoted from the statement the trial court made prior to entering its verdict. *Thomas I*, at 2-10, 15-18. The Superior Court agreed with the Commonwealth that, although there was no direct eyewitness testimony that Petitioner was present at the scene of several of the burglaries, it had presented "abundant and credible" circumstantial evidence to support Petitioner's convictions. *Id.* at 16; *id.* at 18.

Because the Superior Court adjudicated Claim III on the merits, AEDPA's standard of review applies to this Courts review of it. The "clearly established Federal law," 28 U.S.C. § 2254(d)(1), in which to analyze it is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In that decision, the Supreme Court explained that "[t]he Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense. *Jackson*, 443 U.S. at 309. Evidence is sufficient to support a conviction if, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts

---

[6] Respondents provided this Court with an even more detailed, 14-page summary of that evidence in their first answer. ECF No. 20 at 10-23.

to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).

When it denied this claim, the Superior Court applied the Pennsylvania equivalent of the *Jackson* standard. *Thomas I*, at 15-16; *see also Evans v. Court of Common Pleas, Delaware Cnty*., 959 F.2d 1227, 1233 (3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). Because it applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1). *Williams*, 529 U.S. at 406.

The next inquiry for this Court, then, is whether the Superior Court's decision was an "unreasonable application of" *Jackson* under § 2254(d)(1) or based on an unreasonable determination of the facts under § 2254(d)(2). The Supreme Court has stressed to federal habeas courts conducting this analysis that:

> [w]e have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury [or the court in a bench trial]…to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the…verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury [or trial court]." *Cavazos v. Smith*, 565 U.S. 1, __ (2011) (*per curiam*) (slip op., at 1). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. __, __ (2010) (slip op., at 5)).

*Coleman*, 566 U.S. at 651.

Here, Petitioner has not satisfied his burden of proving that the Superior Court's decision to deny his challenge to the sufficiency of the evidence was an "unreasonable application of" *Jackson* or based on an unreasonable determination of the facts. He asserts that some or all of the surveillance footage does not depict him and appears to challenge the fact that the Commonwealth relied upon circumstantial evidence to prove his guilt on some counts. These arguments are not

persuasive. The trial court, sitting as finder of fact, determined that the totality of the identification evidence proved that he was the culprit, and the Commonwealth could rely upon circumstantial evidence to prove its case against him.

Petitioner argues in the alternative that the trial court's verdict *was against the weight of the evidence*. This is purely a state law claim that is distinct from a federal due process claim, and, as such, it is not a claim that is cognizable in federal habeas corpus. *Tibbs v. Florida*, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); *see also Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Based upon all of the foregoing, Claim III is denied. This Court, which must give "considerable deference under AEDPA" to the Superior Court's determination that the Commonwealth introduced sufficient evidence to support the trial court's verdicts, *Coleman*, 566 U.S. at 656, cannot grant Petitioner relief under the circumstances presented here.

4.   Trial Court Error

Petitioner contends in Claim IV that the trial court erred in overruling the defense's objection to Det. Pashel's testimony that the burglaries had "identical MO." Trial Tr. at 145. He argues this testimony offered an improper legal conclusion. ECF No. 29 at 10. This is the same claim the Superior Court denied in *Thomas I*, at 18-22. It is a purely state-law claim and, therefore, is not cognizable in federal habeas corpus.

Petitioner also contends that the trial court should not have allowed the case to proceed to trial because there was no evidence linking him to the crimes, that it erred in reaching its verdicts because the Commonwealth introduced insufficient evidence, and that its verdict was against the weight of the evidence. ECF No. 29 at 10. These are the same arguments he brings in support of

Claim III. They do not entitle Petitioner to habeas relief for the reasons discussed by the Court in disposing of that claim.

### E.     Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied for the reasons given herein. Accordingly, the Court will not issue a certificate of appealability on any of Petitioner's grounds for relief.

**IV.    Conclusion**

Based upon the foregoing, the Court concludes that Petitioner has not satisfied his burden of demonstrating that he entitled to the writ of habeas corpus. The Court will deny the Second Amended Petition (ECF No. 29) and it will deny a certificate of appealability.

An appropriate Order follows.


Date:  December 10, 2020

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge